# MARTIN R. STOLAR

Attorney at Law
351 Broadway
New York, NY 10013
212-219-1919 (fax) 212-941-0980
mrslaw37@hotmail.com

October 7, 2009

**BY ECF AND MAIL**

Hon. Dora L. Irizzary
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

                Re: <u>Application of Madison, et al.</u>
                   MC-09-647

Dear Judge Irizzary:

       This letter-memorandum is submitted to outline why we believe that the legal principles underlying the appointment of a Special Master in search warrant cases support the request for such relief that we have made in this case.

       The most recent, and thorough, analysis of the necessity for a Special Master may be found in the opinion of Judge Koeltl in the Southern District of New York in <u>U.S. v. Lynne Stewart</u>, 02 Cr. 396 (JGK), reported at 2002 WL 1300059 (SDNY).  The search in question in that case was for a lawyer's office, which she shared with other lawyers, and raised serious questions about the attorney-client privilege as well as responsiveness to the warrant which was executed.  Finding that a search of a lawyer's office raised "exceptional circumstances", a finding noted in several similar cases cited in the opinion, Judge Keoltl determined that a Special Master was required to "perform an initial review of the materials for privilege and responsiveness".  2002 WL 1300059 at p.9.

       In this case, such "exceptional circumstances" similarly exist with respect to materials which may be privileged and, more significantly, with respect to responsiveness because of the vague nature of the search ordered to be conducted and the failure of the warrant to describe with particularity the items to be seized..

Privileges

      1. Attorney-client privilege

For at least since 2004, both Elliott Madison and his wife Elena Madison have been associated with an organization known as "The Peoples' Law Collective". This group has existed to provide legal support and information for people involved in First Amendment demonstration and protest activities, including legal support for those arrested during the course of such activities. They, and the group, have often been involved as support for particular attorneys working on particular cases of arrested individuals and have been used to facilitate communications between the attorneys and their clients. In other words, they have become part of the defense team.

In is presently unknown whether any of the materials seized from the residence actually fall into this category, but the probability exists that some of them do. In this case, a review of the materials by the Madisons and their legal counsel would result in the creation of a "privilege log" so that claims that such materials may be privileged can be evaluated by the Court.

      2. Social Worker privilege

Mr. Madison is currently employed ( and has been for the past 10 years) as a social worker by Fountain House, an organization which provides counseling and services primarily to a population of mentally ill individuals. Although Mr. Madison is not a licensed social worker, which would provide automatic protection under New York State law (see CPLR §4508), his duties and activities with respect to his patient population are identical to those of someone with such a license. Thus, Federal Rules of Evidence, Rule 501, which calls for the recognition of a privilege "in the light of reason and experience" would cover the activities of Mr. Madison in his capacity as a social worker.

Among the materials seized are documents, telephone records, and computer records of Mr. Madison's approximately 108 clients, including social security numbers, diagnoses, courses of treatment, drug abuse, medications and the like. In addition to the privilege claims asserted here, some of the information may very well be protected by the privacy provisions of HIPPA (The Health Insurance Portability and Accountability Act of 1996).

Again, the creation of a "privilege log", following a review of the materials by Mr. Madison and his legal counsel, would greatly aid the Court in determining whether any of the materials are subject to the privilege.

3.  First Amendment privilege

Both of the Madison's are political activists and associate with others for the purposes of expressing their political thoughts and ideas. This ranges from working with individuals engaged in the "Community Gardens" movement to other like-minded political anarchists. Lists or identifying information of persons with whom the Madison's associate for these political purposes would be protected by the First Amendment as would communications with them about political activity. Although, given the nature of the "crimes" being investigated, such materials might be leads to others involved in " violations of federal anti-rioting laws", the creation of a "privilege log" would greatly facilitate the separation of materials in which the government might have a legitimate interest from those which the government should be prohibited from collecting.

<u>Responsiveness</u>

The warrants in question called for the seizure of "evidence of the commission of rioting crimes" and materials "designed or intended as a means of violating the federal anti-rioting laws". Presumably, this is a reference to 18 U.S.C. §§2101 and 2102, sometimes known as the "Rap Brown Law". A review of the cases shows that prosecutions under these statutes have not been undertaken in a serious way since the 1970's and would lead to a certain amount of unfamiliarity among the searching agents as to what exactly such evidence might consist of.

A lack of definition in the warrants beyond the general use of the anti-rioting laws terminology leaves a huge amount of discretion in the searching agents as to what might constitute such evidence. The fact that the warrant does not describe with particularity the items to be seized, beyond the notation of a statute which has not been used in many years, led to the seizure of political books and tracts, fiction and non-fiction writing, posters, pictures and stuffed animals. Anarchist literature and magazines, in and of themselves, do not yield evidence of crimes any more than Republican or Democrat writings and magazines and thus the seizure of such materials is not responsive to the warrants.

The appointment of a Special Master to review the materials seized, informed as he or she may be by the government's positions on what may constitute evidence, is the best way to separate legitimate "evidence" from a mass of items seized which have absolutely no evidentiary value.

On the other hand, it is possible that the warrants were executed as an aid to the prosecution of Mr. Madison in the Pennsylvania state court on the charges he

was arrested for on September 24, 2009.  In that case, it is difficult to see how any of the materials seized could aid such a prosecution.

   Mr. Madison (and a co-defendant Michael Wallschlager who is also a claimant in the instant motion) are charged in the state court with using "twitter" to communicate to demonstrators that the local police had issued an order to disburse (supposedly "hindering prosecution"), criminal use of a telecommunications facility (presumably cell phones and computers found in their motel room), and possessing instruments of a crime (the same phones and computers).  These alleged crimes were complete and the evidence supporting them was seized at the arrest of Mr. Madison on September 24, 2009 and the search of his motel room.  Why a search of his home a week later would lead to other "evidence" of the commission of such crimes is a good question.

   Furthermore, preliminary research into the Pennsylvania statutes shows that these statutes have <u>never</u> been applied to the alleged conduct of Mr Madison.  Similarly, preliminary research has shown that the application of these state statutes to Mr. Madison's alleged conduct may be violative of First Amendment and due process principles of vagueness in that they do not give adequate notice of what conduct may be outlawed and give too much discretion to law enforcement and prosecuting officials in deciding what conduct to criminalize.

   Thus, the vagueness and weakness of the underlying Pennsylvania charges invites an overbroad search and seizure because no one, especially law enforcement, knows what evidence could be used to support such charges.

   The appointment of a Special Master is this extraordinary circumstance will provide ample protections to the government in its search for actual evidentiary materials and, at the same time, provide protections to those who were subject to the seizure of private, personal, and protected items.

                                                            Very truly yours,


                                                            _____/s/_____
                                                            Martin R. Stolar

MRS/s
cc: All counsel (by ECF)
    Andrew Goldsmith, Esq. (By mail)